IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTINE KENDRICKS       §
                          §
VS.                       §     ACTION NO. 4:10-CV-289-Y
                          §
KIMBERLY HOPKINS, ET AL.  §

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

    Pending before the Court is Defendants' Motion for Judgment on the Pleadings (doc. 33). After review of the motion, the related briefs, Plaintiff's second amended complaint and Rule 7 reply, and the applicable law, the Court concludes that Defendants' motion should be and hereby is GRANTED.

I. Background

    Plaintiff Christine Kendricks, who is proceeding herein pro se, was a nursing student at the University of Texas at Arlington ("UTA"). Kendricks alleges in her second amended complaint that during the fall of 2009, while she was performing clinical course work at Arlington Memorial Hospital, she was the subject of "false, defamatory and malicious statements" made by her clinical instructor, defendant Hopkins, that "were circulated to and perpetuated by faculty members." (2d Am. Compl. [doc. 16] 1-2.) Kendricks contends that as a result of these statements, she was ultimately given a failing grade, expelled from the nursing program, and suffered damage to her reputation. (*Id.* 2.)

    Specifically, Kendricks complains that defendant Hopkins asserted that she "is untrustworthy, unprofessional, unsafe in the clinical

setting, did not want to be a nurse, and did not care about her duties as a nursing student." (*Id.*)  Kendricks also contends that Hopkins "routinely singled out and harassed" her.  (*Id.* 4, ¶ 12).  On September 9, Hopkins allegedly forced her to sign a "student learning contract" containing various infractions that were untrue, threatened to have her "kicked out of the program," and labeled her as "aloof." (I*d.* 5, ¶ 14.) She contends that Hopkins "engaged in behaviours [sic] that constituted differential treatment, procedural irregularities, and discrimination" against Kendricks, who is African-American. (*Id.* ¶ 15.)

Kendricks alleges that on the day she received this written reprobation, she wrote a letter complaining about Hopkins's behavior to defendant Poster, the dean of UTA's nursing school, but no investigation was undertaken.[1]  (*Id.*)  She also requested that Jenkins, the lead clinical teacher at UTA, place her with another clinical instructor, but that request was denied.

At the end of October, when Kendricks allegedly was ill, she received another "student learning contract" for being absent. (*Id.* 6, ¶ 20.) She alleges that Hopkins and Jenkins wrongfully labeled her absence as unexcused.  Nevertheless, from September 23 through November 11, Kendricks alleges that she completed numerous clinical rotations with no complaints.  On November 13, however, she was notified that she would be receiving a failing grade for the clinical portion of her course work.

---

[1]The exhibits attached to her complaint belie this contention, however, revealing that Poster referred her complaint to Jenkins to "work up the 'chain of command.'"  (2d Am. Compl. [doc. 16] Ex. 5.)

As a result, she requested that defendant Jenkins provide her with the reasons for her failing grade. On November 16, she alleges that she "was presented with unfounded and unsubstantiated allegations of unsafe/unprofessional behaviour at [the hospital]." (*Id.* 7, ¶ 24.) Kendricks complains that she was not made aware of these allegations before she received her failing grade and that, as a result of the allegations, she was removed from the nursing program. Defendant Poster allegedly approved the decision, (*id.* 9, ¶ 33), so Kendricks complained to defendant Bobbitt, UTA's provost and vice president of academic affairs, and defendant Spaniolo, UTA's president. Kendricks complains that they "stood in support of the false and defamatory statements." (*Id.* 10, ¶¶ 36, 37.)

Kendricks sues the defendants in their individual capacities under 42 U.S.C. § 1983, alleging that their actions violated her Fifth Amendment rights and caused damage to her reputation.[2] (*Id.* 2.) She contends she "was not afforded due process before the clinical failure was issued [and she was] barred from clinical rotations at Texas Health Arlington Memorial Hospital." (*Id.* 8, ¶ 28.) She also alleges that defendant Poster denied her "access to the grievance process" and would not give her "the names of grievance committee members." *(Id.* 11, ¶¶ 42, 44.) In addition to her constitutional claims, Kendricks alleges that Defendants' actions constituted negligence and the intentional infliction of emotional distress.

Kendricks's Rule 7(a) reply, filed after the defendants asserted

---

[2]Kendricks originally asserted claims against UTA; those claims were dismissed in an order filed on

the qualified-immunity defense, re-alleges most of the factual allegations of her second amended complaint. Additionally, however, Kendricks alleges that she was terminated from the nursing program "for engaging in protected speech." (Reply [doc. 32] 5, ¶ 3.) Kendricks complains that she was dismissed from the nursing program in retaliation for her reporting of Hopkins's harassment and discrimination. Defendants now seek judgment on the pleadings under Federal Rule of Civil Procedure 12(c), contending that they are entitled to qualified immunity and that Kendricks has failed to state a viable claim for relief.

## II. Standards of Review

A. Federal Rule of Civil Procedure 12(c)

Rule 12(c) states that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002)). "Thus, the 'inquiry focuses on the allegations in the pleadings' and not on whether the 'plaintiff actually has sufficient evidence to succeed on the merits.'" *Ackerson v. Bean Dredging, LLC,* 589 F.3d 196, 209 (5th Cir. 2009) (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007)).

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal

of a complaint that fails "to state a claim upon which relief can be granted."  This rule must, however, be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  F<small>ED</small>. R. C<small>IV</small>. P. 8(a); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding Rule 8(a)'s simplified pleading standard applies to most civil actions).  The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff. *Kaiser Aluminum*, 677 F.2d at 1050.

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 & 1974 (2007).  The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action."  *Id.* at 1955.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In considering a motion to dismiss for failure to state a claim,

"courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). Documents attached to or incorporated in the complaint are considered part of the plaintiff's pleading. *See* FED. R. CIV. P. 10(c); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2nd Cir. 1994); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). "Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *accord Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974).

B. Qualified Immunity

Public officials performing discretionary functions enjoy immunity from suits for damages, provided their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

When a court is called upon to confer qualified immunity upon

a government official accused of violating a federal constitutional or statutory right, United States Court of Appeals for the Fifth Circuit requires that the court employ a three-part inquiry. *See Conroe Creosoting Co. v. Montgomery Cty., Tex.*, 249 F.3d 337, 340 (5th Cir. 2001). First, the court must determine whether the plaintiff has actually alleged the violation of a federal constitutional or statutory right. *See id.* If the court determines that he has, the court must then decide whether, at the time of the alleged violation, that right was so clearly established that a reasonable government official in the defendants' situation would have understood that his conduct violated that right. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).[3] Finally, the court must "determine whether the record indicates that the violation occurred, or gives rise to a genuine dispute of material fact as to whether the defendant actually engaged in the conduct that violated the clearly established right." *Conroe Creosoting*, 249 F.3d at 340. Regarding this last prong at the pleading stage, a court would only determine whether a plaintiff's allegations, assumed to be true, sufficiently demonstrate the violation or suggest that the individual defendant engaged in the conduct alleged.

Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v . Briggs*, 475 U.S. 335, 341 (1986). The burden is on the plaintiff

---

[3]This second part of the test is often referred to as "objective reasonableness." Thus, "whether an official protected by qualified immunity may be held personally liable turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639(1987).

to show the inapplicability of the qualified-immunity defense. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

### III. Analysis

A. Constitutional Claims

After careful review of Kendricks's pleadings, the Court concludes that Defendants are entitled to qualified immunity because Kendricks has failed to adequately allege the violation of her constitutional rights. Kendricks's complaint specifically invokes her Fifth Amendment right to due process,[4] but she fails to allege any facts demonstrating that she had a constitutionally protected property interest in continuing her clinical studies or remaining in the nursing program.[5] *See Shaboon v. Duncan*, 252 F.3d 722, 729-32 (5th Cir. 2001) (in reviewing whether medical student was denied due process during dismissal from residency program, noting that although "medical staff privileges can constitute a property interest, . . . . [p]hysicians have a property interest in clinical privileges [only] if their contracts explicitly or implicitly allow termination only for cause."). Kendricks fails to allege that she had a contract with UTA providing that she would be terminated from her clinical studies or the nursing program only for cause, nor are any facts

---

[4] Inasmuch as Defendants are state officials, the Court presumes that Kendricks intends to invoke the 14th Amendment's due-process protections. *Cf. Paul v. Davis*, 424 U.S. 693, 702 n.3 (1976) (noting that "the Fourteenth Amendment imposes no more stringent requirements upon state officials than does the Fifth upon their federal counterparts").

[5] "The requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).

alleged from which such an agreement can be inferred.

She has also failed to allege sufficient facts to demonstrate a violation of her liberty interests. Although injury to one's reputation alone is insufficient to implicate a liberty interest, when coupled with the deprivation of more tangible interests, such as one's status as a student, a constitutional interest may be arise. *See Wheeler v. Miller*, 168 F.3d 241, 249 (5th Cir. 1999). Nevertheless, even assuming Kendricks's liberty interests were implicated, she has failed to allege any facts demonstrating that UTA's officials made or intend to make Hopkins's charges against her public. *See Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975) ("the mere presence of derogatory information in confidential files does not infringe an individual's liberty interest . . . . [Rather,] infringement of one's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public in any official or intentional manner, other than in connection with the defense of the (related legal) action").

More importantly, even assuming Kendricks has alleged infringement of a constitutionally protected due-process interest, it is clear from her allegations and the attachments to her complaint that she was provided with any process that was due. The exhibits to the second amended complaint reflect that Kendricks protested Hopkins's actions regarding the September 9 "student learning contract" to Poster, dean of the nursing school, who apparently referred Kendricks's protest to Jenkins, the lead clinical instructor,

for investigation. The exhibits also reflect that on November 11, she had an additional conference with Hopkins and Jenkins about what they perceived to be her lack of truthfulness in reporting her efforts to provide patient care. Jenkins's notes regarding her investigation of the September 9 incident and the November 11 conference make clear that Kendricks was permitted to provide her instructors with her version of events. The instructors obviously were not persuaded and concluded that she should receive a failing grade.

Kendricks apparently then appealed that decision to Poster, the dean. Her complaint makes clear that Poster referred the matter to a grievance committee who sided with the instructors. Although Kendricks alleges that Poster denied her access to the grievance committee and its members' identities, those allegations are entirely conclusory. Furthermore, she alleges no facts demonstrating that she was entitled to know the identities of the grievance-committee members.

The exhibits to the complaint further demonstrate that Kendricks appealed her failing grade to Bobbitt, the school's provost. She also alleges that she complained about the decision to Spaniolo, the school's president.

Despite having appealed Hopkins's decision through all these levels, Kendricks disputes that she was provided with due process. Kendricks's pleadings do not specify, however, what process she believes she was denied.[6] To the extent she contends she was entitled

---

[6] Her Rule 7(a) reply alleges that she "was denied access to the University appeals system, as outlined in the UTASON Student Handbook." (Reply [doc. 32] 6, ¶ 8.) She wholly fails to allege any facts in support of the allegation,

to a formal hearing prior to her failing clinical grade and subsequent dismissal from the nursing program, she is wrong. *See Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85-86 (1978) (noting that a formal hearing is not required even with regard to a disciplinary dismissal from a medical-student program, and that academic dismissals "call[] for far less stringent procedural requirements").

Kendricks repeatedly refers to the harassment and discrimination she allegedly suffered at the hands of defendant Hopkins. Kendricks's Rule 7(a) reply attempts to cast her claim as a First Amendment claim based upon her right to free speech, contending that Defendants gave her a failing grade and expelled her in retaliation for reporting Hopkins's alleged harassment and discrimination. Kendricks fails, however, to allege any specific facts supporting her contentions that she was subjected to discrimination or harassment by Hopkins. She fails to allege any facts tending to suggest that Hopkins treated her any differently from other students who were not in her protected class. And she presents no more than conclusory allegations that the other defendants' actions constituted a conspiracy to retaliate against her for reporting such actions. Although she contends that Hopkins's complaints against her were untrue, the exhibits to her complaint reflect that she vacillated about the accuracy of at least some of Hopkins's allegations against her. Thus, it appears that

---

however, such as who denied her such access or the manner in which it was denied. Nor does she include any allegations tending to suggest that the requirements of the student handbook rose to the level of a constitutionally-protected liberty or property interest.

Kendricks's real complaint is that the UTA officials believed Hopkins's version of events over her own. In any event, she has failed to allege sufficient facts to show that her constitutional claims have facial plausibility, and Defendants are thus entitled to immunity.

B. State-Law Claims

Kendricks also asserts against Defendants state-law claims of negligence and intentional infliction of emotional distress. The prior version of her complaint, however, appeared to assert these claims against UTA.[7] Consequently, as noted in this Court's order August 19, 2010, order, the Court dismissed these claims against Defendants for lack of jurisdiction to the extent they were asserted against UTA, either directly or through the individual defendants in their official capacities.

Kendricks now attempts to assert these claims against Defendants in their individual capacities. As urged by Defendants, however, her tort claims against them individually are barred under section 101.106 of the Texas Tort Claims Act ("TTCA"):

> By section 101.106, a plaintiff must choose whether he would seek to impose tort liability on a governmental unit or on a governmental employee acting as an individual

---

[7]For example, her first amended complaint asserts, in the portion of the pleading devoted to her negligence claims, that "[t]he University's negligent acts include, but are not limited to, failure to monitor University employees, failure to properly and adequately train, monitor, investigate, discipline, or take other necessary action to address harassment and/or assaults by University employees o[r] that otherwise may occur on the Univesrity campus or University nursing school clinical sites." (Am. Compl. and Jury Demand [doc. 4] 12, ¶ 57.) Similarly, her IIED claim alleges that "[t]he University of Texas at Arlington, through its agents and assigns, knew about and covered up the harassment and assault of the Plaintiff, creating and fostering an atmostphere of fear and slience for Ms. Kendricks, constituting extreme and outrageous conduct. At all times hereto, Defendant Hopkins was acting as an agent of the University of Texas system." (*Id.* 13, ¶ 60.)

> outside the employee's official capacity. The choice of one immediately and irrevocably bars the plaintiff's claims against the other. A plaintiff unwise in his choices potentially faces an irrevocable bar against both the governmental entity and its employee. The effect of the statute is that a plaintiff is no longer able to include every potential tortfeasor in a suit, argue alternative theories of recovery based on the same conduct, and allow a fact finder to decide which party was the wrongdoer.

*Huntsville Indep. Sch. Dist. v. Briggs*, 262 S.W.3d 390, 292 (Tex. App.--Waco 2008, pet. denied). Although Kendricks did not specifically name UTA as a defendant in her original and first amended complaints, she made allegations against UTA in the sections of her complaint setting forth her state-law claims. And she made claims against the individual defendants for conduct that was clearly undertaken in the scope of their employment. As a result, her tort claims against the individual defendants are barred under the TTCA and must be dismissed. *See Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex. App.--Waco 2005, pet. denied) ("Upon the motion of either the government or the employees, a plaintiff is forced to proceed against the government alone in three circumstances: "(1) when the suit is initially filed against the governmental agency alone; (2) when the suit is initially filed against both governmental agency and its employees; and (3) when the suit is initially filed against the government employee when the employee's conduct is alleged to have been within his scope of employment").

## IV. Conclusion

For the foregoing reasons, Defendants motion for judgment on

the pleadings is GRANTED, and Kendricks's claims are DISMISSED WITH PREJUDICE to their refiling.

SIGNED May 25, 2011.

*[signature: Terry R. Means]*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE